**SMITH KRIVOSHEY, PLLC**
Yeremey O. Krivoshey (State Bar No. 295032)
166 Geary Street, Ste. 1500-1507
San Francisco, CA 94108
Phone: 415-839-7000
E-Mail: yeremey@skclassactions.com

**SMITH KRIVOSHEY, PLLC**
Joel D. Smith (State Bar No. 244902)
867 Boylston Street, 5th Floor, Ste. 1520
Boston, MA 02116
Phone: 617-377-7404
E-Mail: joel@skclassactions.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEREMY REVITCH, individually and on behalf of all others similarly situated,<br><br>                              Plaintiff,<br><br>     v.<br><br>BSH HOME APPLIANCES CORP.,<br><br>                              Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br><u>JURY TRIAL DEMANDED</u> |

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

**NATURE OF THE ACTION**

1. Reasonable consumers expect that when they splurge on a high-priced Bosch dishwasher (which can easily cost over $1000), it not only looks good, but can perform its basic functions as intended.

2. However, despite their high price, Bosch-brand dishwashers suffer from a common defect which renders them unfit for their intended purpose.  Namely, the 100-, 300-, 500-, and 800- Series Bosch dishwashers are defectively designed and/or manufactured with defective control panel labeling that fades within a relatively short period of time after purchase, and far shorter than the expected useful lifespan of the product.  The lettering can fade even on floor room models that have never been used.  The control panels on these products involve numerous settings and buttons, which are not intuitive to use.  Without the ability to see the control panel labeling, the dishwashers are impossible, or at least unreasonably difficult, to use for their intended purpose of safely and properly cleaning dishes.

3. Defendant BSH Home Appliances Corp. ("Bosch") knows that the problem is widespread, but it does not provide repairs for this defect under warranty, nor has it attempted to fix the problem.  Bosch does not disclose the defect to prospective customers.

4. Plaintiff brings this action on behalf of himself and other purchasers of the affected products.

**PARTIES**

5. Plaintiff Jeremy Revitch is domiciled in California.  In July 2021, Plaintiff purchased an 800-Series Bosch dishwasher, model number SPX68B55UC, for over $1,100.  Although there were several less expensive competitor models available, he chose the Bosch dishwasher in part based on the company's reputation for reliability and quality.  However, the control panel lettering began to fade within 18 months of purchase.  Plaintiff would not have purchased the dishwasher, or would have paid much less for it, if he had known about the defect causing premature fading of the control panel.

6. The control panel lettering on Plaintiff's dishwasher is shown in the image below:



7. Plaintiff would be interested in purchasing Bosch dishwashers in the future if Bosch fixed the control panel defect. However, he cannot know for certain whether the defect has been or will be corrected. The technology used for the panel labeling may change over time, but unless Bosch is compelled to either take remedial action or disclose the existence of the defect, Plaintiff will be unable to make informed decisions about whether to purchase a Bosch dishwasher.

8. Defendant Bosch is a Delaware corporation with its principal place of business and headquarters in Irvine, California. The final decisions and approvals regarding the conduct at issue here were made in California.

**JURISDICTION AND VENUE**

9. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed

class are in excess of $5,000,000.00, exclusive of interest and costs, and at least one member of the proposed class is citizen of state different from Defendant.

10. This Court has personal jurisdiction over Defendant because it conducts substantial business and is headquartered in California. A substantial portion of the events giving rise to the claims alleged here occurred in this state.

11. Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District.

## FACTUAL ALLEGATIONS

12. **Product at Issue:** 100-, 300-, 500-, and 800- Series Bosch dishwashers sold in the United States ("subject dishwashers").

13. **Relevant Time Period:** On information and belief, the defect at issue here has existed for the last four years, at least.

14. Consumers rely on manufacturers, including Bosch, to ensure that dishwashers are safe, efficient, and function as intended.

15. Bosch states, "[w]ith our home appliances, we represent uncompromising quality, technical perfection, and absolute reliability. Yesterday, today, and in [the] future."

16. Each of the appliances Bosch makes, including the dishwashers in question, are branded with the "Bosch" logo or can otherwise be readily identified as being a Bosch product.

17. Each of the Bosch-branded dishwashers contains a defect that prevents proper use of the dishwasher due to the inability to use the vital control panel. More specifically, the lettering on the control panel fades over time and renders the dishwasher unusable. The interface for the dishwashers is electronic. Consumers use the dishwashers primarily through inputs to the control panel. The control panel and the display are critical to the use and safety of the products, which is why Bosch, and every other manufacturer of dishwashers, uses a display that tells consumers what the dishwasher is doing at any given time. Users must input various settings in the control panel to use the dishwashers.

18. There have been an unusually high number of customer complaints about premature fading of control panel lettering on the subject dishwashers. A non-exhaustive list of examples are quoted below:

> *My Bosch dishwasher control panel lettering is disappearing. This started about 1.5 years ago and now at 3 years old I can barely read the right side of the panel. This will eventually make the dishwasher impossible to use. Bosch only guarantees against this problem for one year.*
>
> *has anyone else experienced this? Is there a remedy for this?*
>
> *\*\*\**
>
> *We bought a Bosch dishwasher 8 years ago and the same thing happened to our panel after a couple of years. We have been told it was a common problem. We just recently went looking to replace our dishwasher and noticed that the Bosch floor model of a 500 series was already losing its lettering. Can't comprehend how a manufacturer of expensive appliances hasn't fixed this serious defect.*
>
> *\*\*\**
>
> *Hi, this has also happened to us! It started after having it for two years and now, 3 years on, it is almost gone. I haven't been able to find any solution as of yet.*
>
> *\*\*\**
>
> *Same problem, happened almost immediately. Very few letters left and too late to take a picture.*
>
> *\*\*\**
>
> *I have a Bosch SHX46A02UC/14 [500-Series] dishwasher. The settings have worn off the buttons on the control panel. Can you tell me what the settings on these five buttons are starting from left to right? Thank you.*

19. Operating the dishwasher without being able to see the settings undermines a consumer's ability to use the products to properly clean dishes.

20. Bosch expressly and impliedly warrants, via user manuals, advertisements, pamphlets, brochures, circulars, samples, and/or models, that the dishwashers are fit for the ordinary purpose for which they are sold.

21. It is generally recognized that modern dishwashers typically last 9-16 years, with an average life expectancy of 12 years.

22. However, Bosch only provides a limited one-year warranty on the subject dishwashers. That warranty fails of its essential purpose because (1) Bosch fails to disclose its knowledge of the control panel defect; and (2) Bosch does not provide control panel lettering replacements under warranty.

23. Further, Bosch breached the product warranty when it shipped the dishwashers at issue (and at the point of sale to consumers) because the dishwashers were defective when they came off of the assembly line. The defect causes the control panel lettering to fade prematurely, making consumers unable to use the dishwashers properly or safely.

24. Further, because Bosch does not have non-defective dishwashers available to replace the defective dishwashers, and because its repairs (if any) are simply a band-aid that do not resolve the defect, it is unable to fulfill its warranty obligations at the point of purchase, or anytime thereafter, and the warranty is therefore breached immediately upon purchase.

25. In addition, the warranty is unconscionable as follows:
   (a) In its limitation to the first owner without transferability;
   (b) In the one-year time limitation when the latent defect often does not manifest until after the expiration of the limitation;
   (c) In the failure and refusal to extend the time limitation at the time a replacement part is installed;
   (d) In its attempt to restrict tolling of the one-year limitation;
   (e) In its disclaimer of warranties; and
   (f) In its limitation of remedies, including disclaimer of consequential damages.

26. The warranty is also unconscionable given Bosch's knowledge of the defect, the existence of the defect at the point of sale, Bosch's failure to disclose the defect at the time of sale and during warranty communications, and in the premature failure of the product control panel lettering.

27. Any limitations on the warranty are also procedurally unconscionable. There was unequal bargaining power between Bosch, on the one hand, and the Plaintiff and Class Members, on the other.

28. Any limitations on the warranty are also substantively unconscionable. Bosch knew the dishwashers were defective and would continue to fail prematurely after the warranties expired. Bosch failed to disclose the defect to Plaintiff and Class Members. And, when consumers would complain to Bosch about the defect, Bosch actively concealed the existence of the defect and prevented consumers from discovering it. Thus, Bosch's enforcement of the durational limitations on these warranties is harsh and shocks the conscience.

29. Bosch has actively concealed the existence and nature of the defect from Class Members, despite its knowledge of the existence and pervasiveness of the Defect, and certainly well before Plaintiff and Class Members purchased the dishwashers and during warranty communications. Specifically, Bosch has:

(a) Failed to disclose the defect to consumers, at or after the time of purchase, including when consumers make warranty claims or otherwise complain to Bosch about the defect;

(b) Actively concealed the defect from consumers, at or after the time of purchase, including when consumers make warranty claims, or otherwise complain to Bosch about the defect;

(c) Failed to disclose, and actively concealed the defect from consumers, including that the dishwashers, specifically the control panel lettering, were not fit for their intended purpose; and

(d) Failed to disclose and actively concealed the defect from consumers when it improperly and unlawfully denied valid warranty claims.

30. As a direct, proximate, and foreseeable result of the defect, Plaintiff and Class Members suffered damages, including but not limited to: (a) the difference in value of the dishwashers as purchased and the dishwashers received; (b) loss of use of the dishwashers; (c) costs to repair or replace the units, including labor and parts; and (d) consequential damage.

31. Plaintiff and Class Members were in privity with Bosch because Bosch makes direct representations to consumers, who are the ultimate purchasers, about the qualities and attributes of the dishwashers – including the aforementioned advertising on Bosch's website about the quality of their products. Anyone who installs the dishwashers in their home must make specific accommodations in their kitchen to fit the Product into their kitchen, including specialty cabinetry designed for dishwashers.

32. Further, Bosch, through its authorized dealers, issued warranties to Plaintiff and Class Members as part of the sale of the dishwashers. For consumers with warranty claims, in its user manual, Bosch represents that either Bosch or one of its authorized service providers will perform the repairs; otherwise, the warranty is null and void. Thus, the warranty was designed for and intended to benefit only the consumer—here, the Class Members.

33. In addition, when consumers register their dishwashers with Bosch, the company directs consumers to contact Bosch directly in the event of any issues with their product and also promises consumers that Bosch will directly contact them if Bosch discovers any issues with the product. In particular, in the warranty registration, Bosch represents the many "Benefits of registering your Bosch products," including that "[c]ustomer service is fast and efficient if we have all the information in our records," "[i]n the unlikely event of a recall or safety notice, we'll be able to contact you," and "[i]n the event of a loss due to fire, flood or theft, your registration may serve as proof of purchase for your insurance carrier."

34. In any event, privity is not required here because Plaintiff and each Class Member were (and are) intended third-party beneficiaries of the dishwashers. The retailers were not intended to be the ultimate consumers of the dishwashers and have no rights under the warranty agreements provided with the dishwashers to Class Members.

35. Plaintiff provided pre-suit notice of the defect to Bosch via certified mail. The notice letter was sent on behalf of Plaintiff and all putative class members. Bosch took no remedial action after receiving the notice letter.

36. Bosch knew or should have known when it sold the dishwashers to the public that they suffered from the defect, and that the defect caused the control panel lettering to fade and malfunction within their expected useful life.

37. As part of its regular business operations, and starting long before 2021, Bosch monitors customer complaints and warranty claim data it receives to identify recurring problems with its products. For example, Bosch's website includes a customer support page stating, "No matter what, no matter when: The Bosch Support Team is here for you," and instructs customers to call, text, or email the company. From these sources, Bosch would have known that the subject dishwashers were experiencing unusually high levels of complaints about premature fading of the control panel labeling.

38. Defendant also would have monitored online customer forums as part of its online reputation management efforts, which is now a standard business practice among most major companies, including Bosch. An online search reveals an unusually high number of customer complaints about premature fading of control panel lettering on the subject dishwashers, for example, like those quoted above.

39. The fact that so many consumers made similar complaints and warranty claims indicated that the complaints were not the result of user error or anomalous incidents, but instead a systemic problem with the dishwashers. The complaints and warranty claims from customers were similar enough to put Bosch on notice that the problem described was the result of a defect, and that customers were experiencing unusually high levels of complaints about fading of the control panel lettering.

40. Bosch has a duty to disclose the defect and to not conceal the defect from Plaintiff and Class Members. Bosch's failure to disclose, or active concealment of, the defect places Plaintiff and Class Members at risk of personal injury caused by unsanitary dishwashing.

41. Bosch currently sells the defective dishwashers, concealing the defect, failing to notify consumers of the defect, and failing to recall the dishwashers.

42. Bosch continues to falsely represent through written warranties that the dishwashers are free from defect, are of merchantable quality, and will perform dependably for years.

43. Bosch does not disclose that the dishwashers suffer from the defect. As a result, reasonable consumers, including Plaintiff and Class Members, purchased and used, and continue to purchase and use the dishwashers in their homes even though it is unsafe to do so.

44. Had Plaintiff, Class Members, and the consuming public known that the dishwashers were defective, posed an unreasonable risk of harm to themselves and their property, and would cause damage, they would not have purchased them.

45. Bosch has wrongfully placed on Plaintiff and Class Members the burden, expense, and difficulty involved in discovering the defect, repairing and replacing the control panels (potentially multiple times), and paying for the cost of damages caused by the defect.

## CLASS ALLEGATIONS

46. ***Class Definition***: Plaintiff brings this action on behalf all people the following classes and subclasses:

> Nationwide class: all people in the United States who purchased a subject dishwasher for personal or household use during the last four years.
>
> California class: all people in California who purchased a subject dishwasher for personal or household use during the last four years.

47. Subject to additional information obtained through further investigation and discovery, the foregoing class definitions may be expanded or narrowed by amendment or in the motion for class certification, including through the use of multi-state subclasses to account for material differences in state law, if any.

48. Specifically excluded from the putative classes are Defendant and any entities in which Defendant have a controlling interest, Defendant's agents and employees, the judge to whom this action is assigned, members of the judge's staff, and the judge's immediate family.

49. ***Numerosity.*** Members of the Class are so numerous that their individual joinder herein is impracticable. On information and belief, each Class or Subclass includes thousands of

consumers. The precise number of Class Members and their identities are unknown to the Plaintiff at this time but may be determined through discovery. Class Members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant or other means.

50. **Commonality and Predominance**. Common questions of law and fact exist as to all Class Members and predominate over questions affecting only individual Class Members. Common legal and factual questions include, but are not limited to:

    (a) Whether the subject dishwashers are defectively designed and/or manufactured;

    (b) Whether Defendant knew or should have known about the defect at the time of sale, or thereafter;

    (c) Whether Defendant is liable to Plaintiff and Class members under the causes of action alleged in this complaint; and

    (d) Whether Plaintiff and Class members are entitled to any of the forms of relief they seek in this action.

51. **Typicality.** The claims of the Plaintiff are typical of the claims of the Classes in that Plaintiff and the Classes sustained damages as a result of Defendant's uniform wrongful conduct, as alleged above.

52. **Adequacy**. Plaintiff will fairly and adequately protect the interests of Class members. Plaintiff has retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Class. Plaintiff has no interests that are antagonistic to those of the Class. Plaintiff has no past or present financial, employment, familial, or other relationship with any of the attorneys in this case that would create a conflict of interest with the proposed class members.

53. **Superiority**. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, *inter alia*, the following reasons: prosecutions of individual actions are economically impractical for members of the Classes; the Classes are readily definable; prosecution as a class action avoids repetitious litigation and duplicative

litigation costs, conserves judicial resources, and ensures uniformity of decisions; and prosecution as a class action permits claims to be handled in an orderly and expeditious manner.

54. Defendant has acted or failed to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief with respect to the Classes as a whole.

55. Without a class action, Defendant will continue a course of action that will result in further damages to the Plaintiff and Members of the Classes and will likely retain the benefits of its wrongdoing.

## COUNT I
### Violations of California's Unfair Competition Law ("UCL")
### Cal. Bus. & Prof. Code §§ 17200, *et seq*.

56. Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

57. Plaintiff brings this cause of action individually and on behalf other class members.

58. California Business & Professions Code Section 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

59. Defendant acted with knowledge and intent.

60. Plaintiff allege a claim under the unlawful and unfair prongs of the UCL.

61. Defendant's conduct constitutes "unfair" business acts and practices within the meaning of the UCL, in that its conduct was injurious to consumers, offended public policy, and was unethical and unscrupulous.

62. Plaintiff also allege a violation under the "unlawful" prong of the UCL because Defendant's conduct violated consumer protection laws and the common law as set forth herein.

63. As a direct and proximate result of Defendant's unfair and unlawful practices, Plaintiff and the other members of the Class have suffered and will continue to suffer out-of-pocket losses.

64. Plaintiff and class members have suffered an injury in fact resulting in the loss of money and/or property as a proximate result of the violations of law and wrongful conduct of Defendant alleged herein, and they lack an adequate remedy at law to address the unfair conduct at issue here. Legal remedies available to Plaintiff and class members are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief. Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiff fails to sufficiently adduce evidence to support an award of damages. Damages and restitution are not the same amount. Unlike damages, restitution is not limited to the amount of money defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles a plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Legal claims for damages are not equally certain as restitution because claims under the UCL entail few elements. In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law.

65. Equitable relief is appropriate because Plaintiff may lack an adequate remedy at law if, for instance, damages resulting from their purchase of the Product is determined to be an amount less than the premium price of the Product. Without compensation for the full premium price of the Product, Plaintiff would be left without the parity in purchasing power to which they are entitled.

66. Plaintiff seeks all relief available under the UCL.

**COUNT II**
**Violations of California's Consumer Legal Remedies Act ("CLRA")**
**Cal. Civ. Code §§ 1750, *et seq.***

67. Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

68. Plaintiff brings this cause of action individually and on behalf other class members.

69. Defendant is a "person" as defined by California Civil Code § 1761(c).

70. Plaintiff and the other Class members are "consumers" within the meaning of California Civil Code § 1761(d).

71. For the reasons alleged above, Defendant violated California Civil Code § 1770(a)(5)(7) and (9).

72. Plaintiff provided pre-suit notice of the claims asserted under the CLRA.

73. Defendant's unfair and deceptive acts or practices occurred repeatedly in Defendant's trade or business.

74. Defendant acted with knowledge and intent.

75. As alleged above, Defendant engaged in conduct that had the tendency or capacity to deceive or confuse reasonable consumers.

76. With respect to the CLRA claim, Plaintiff allege in the alternative that they lack an adequate remedy at law for the reasons already alleged above in connection with the UCL claim.

77. As a result of Defendant's misconduct, Plaintiff and other Class members have suffered monetary harm.

78. Plaintiff seeks all relief available under the CLRA except for actual damages. Plaintiff reserves the right to seek actual damages in an amended complaint.

## COUNT III
### Breach of Implied Warranty Under Song-Beverly Act, Cal. Civ. Code § 1790 et seq. and Cal. Comm. Code § 2314

79. Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

80. Plaintiff brings this cause of action individually and on behalf other class members.

81. Under the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790, et seq., and California Commercial Code § 2314, every sale of consumer goods in this State is accompanied by both a manufacturer's and retail seller's implied warranty that the goods are

merchantable, as defined in that Act.  In addition, every sale of consumer goods in this State is accompanied by both a manufacturer's and retail seller's implied warranty of fitness when the manufacturer or retailer has reason to know that the goods as represented have a particular purpose and that the buyer is relying on the manufacturer's or retailer's skill or judgment to furnish suitable goods consistent with that represented purpose.

82. The products at issue here are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

83. Plaintiff and the Class members who purchased one or more of the products are "retail buyers" within the meaning of Cal. Civ. Code § 1791.

84. Defendant is in the business of manufacturing, assembling, producing and/or selling the Products to retail buyers, and therefore are a "manufacturer" and "seller" within the meaning of Cal. Civ. Code § 1791.

85. Defendant impliedly warranted to retail buyers that the products were merchantable in that they would: (a) pass without objection in the trade or industry under the contract description, and (b) were fit for the ordinary purposes for which the products are used. In order for a consumer good to be "merchantable" under the Act, it must satisfy both of these elements.  Defendant breached these implied warranties because the products were unsafe and defective.  Therefore, the products would not pass without objection in the trade or industry and were not fit for the ordinary purpose for which they are used.

86. Plaintiff and Class members purchased the products in reliance upon Defendant's skill and judgment in properly packaging and labeling the Products.

87. The Products were not altered by Plaintiff or Class members.

88. The Products were defective at the time of sale when they left the exclusive control of Defendant.  The defect described in this complaint was latent in the product and not discoverable at the time of sale.

89. Defendant knew that the products would be purchased and used without additional testing by Plaintiff and Class members.

90. Even if Defendant's express warranty purportedly included a disclaimer, the

1  disclaimer was legally insufficient to bar this claim.  First, under section 1792.3 of the Song–
2  Beverly Act, implied warranties of merchantability and fitness may only be waived when the
3  sale of consumer goods is made on an "as is" or "with all faults" basis.  The products were not
4  sold on an "as is" or "with all faults" basis, and the disclaimer made no mention of the sale
5  being "as is" or "with all faults."  Second, under the California Commercial Code, a disclaimer
6  of implied warranties is effective only if it is "conspicuous" and made available to the consumer
7  prior to the sale of the product.  Any purported disclaimer was not conspicuously disclosed.

8     91.   As a direct and proximate cause of Defendant's breach of the implied warranty,
Plaintiff and Class members have been injured and harmed because they would not have
purchased the products if they knew the truth about the products, namely, that they were unfit
for use as dishwashers.

92.   Plaintiff seeks all available relief under this cause of action.

### COUNT IV
### Unjust Enrichment

93.   Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

94.   Plaintiff brings this cause of action individually and on behalf other class members.

95.   To the extent required, Plaintiff assert this cause of action in the alternative to legal claims, as permitted by Rule 8.

96.   Plaintiff and the Class Members conferred a benefit on Defendant in the form of the gross revenues Defendant derived from the money they paid to Defendant.

97.   Defendant knew of the benefit conferred on it by Plaintiff and the Class Members.

98.   Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff' and the Class Members' purchases of the Products, which retention of such revenues under these circumstances is unjust and inequitable because Defendant omitted that the Product was dangerous.  This caused injuries to Plaintiff and Members of the Classes because they

would not have purchased the Product or would have paid less for them if the true facts concerning the Product had been known.

99. Defendant accepted and retained the benefit in the amount of the gross revenues it derived from sales of the Product to Plaintiff and the Class Members.

100. Defendant has thereby profited by retaining the benefit under circumstances which would make it unjust for Defendant to retain the benefit.

101. Plaintiff and the Class Members are, therefore, entitled to restitution in the form of the revenues derived from Defendant's sale of the Product.

102. As a direct and proximate result of Defendant's actions, Plaintiff and the Members of the Classes have suffered in an amount to be proven at trial.

103. Putative class members have suffered an injury in fact and have lost money as a result of Defendant's unjust conduct.

104. Putative class members lack an adequate remedy at law with respect to this claim and are entitled to non-restitutionary disgorgement of the financial profits that Defendant obtained as a result of its unjust conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

a. For an order certifying the Class and naming Plaintiff as the representative of the Class or Classes

b. For an order declaring Defendant's conduct violates the statutes referenced herein;

c. For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

d. For actual, compensatory, statutory, and/or punitive damages in amounts to be determined by the Court and/or jury;

e. For prejudgment interest on all amounts awarded;

f. For an order of restitution and all other forms of equitable monetary relief;

g. For injunctive relief as pleaded or as the Court may deem proper; and

h.  For an order awarding Plaintiff and the Classes their reasonable attorneys' fees, expenses, and costs of suit.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.

Dated:  May 16, 2024                           Respectfully submitted,

                                                                /s/     Joel D. Smith

**SMITH KRIVOSHEY, PLLC**
Joel D. Smith (State Bar No. 244902)
867 Boylston Street, 5th Floor, Ste. 1520
Boston, MA 02116
Phone: 617-377-7404
E-Mail:  joel@skclassactions.com

**SMITH KRIVOSHEY, PLLC**
Yeremey O. Krivoshey (State Bar No. 295032)
166 Geary Street, Ste. 1500-1507
San Francisco, CA 94108
Phone: 415-839-7000
E-Mail:  yeremey@skclassactions.com

*Attorneys for Plaintiff*